May it please the Court. My name is Tamara Jezek and I represent Zulma Zavaleta-Policiano and her three children in her petition for review of an order of the Board of Immigration Appeals denying their applications for asylum, withholding of removal, and relief under the Convention Against Torture. The primary issue in this case is whether Ms. Zavaleta-Policiano's was one central reason for her persecution in her past and one central reason for the persecution she fears in the future. Now, if the Court decides, as we contend, that the evidence compels the conclusion that Ms. Zavaleta-Policiano's relationship to her father is one central reason for her persecution, then the Court need not address the issues on Ms. Zavaleta-Policiano's second particular social group, and that is the social group related to business owners. Those issues are whether Ms. Zavaleta-Policiano's proposed group is socially distinct and whether Ms. Zavaleta-Policiano's membership in that group was one central reason for her persecution. What's the standard of review here? The standard of review? The standard of review is whether substantial evidence, substantial, reasonable, and probative evidence supports the Board's factual finding. But we're dealing with a factual finding here? Yes, Your Honor, both a factual finding and we also, we contend the Board... And normally isn't that a question of clear error? The Board's review of the immigration judge is factual for clear error. This Court's standard of review is one whether the Board's decision is supported by substantial, reasonable, and probative evidence on the record as a whole, and this Court must uphold the Board's factual findings unless no reasonable fact finder could find those findings, and the record compels the contrary conclusion. And Your Honor, in this case, it is our contention that the record compels the conclusion that Ms. Zavaleta-Policiano's relationship to her father is one central reason for her persecution. Is it your understanding, is the question whether the relationship with the family is a social group? Go ahead. No, Your Honor, I don't think that's the question. So everybody agrees that if she were persecuted on account of a familial relationship sufficient to constitute a family relationship, then that's a social group? Yes, there's no dispute that she is a member of the Policiano family. Right. And if she were persecuted on that basis, that would be a sufficient nexus, right? Yes, Your Honor. So what is the question? Whether Ms. Zavaleta-Policiano's membership in her family is one central reason for her persecution. And the IJ and the Board said no, had nothing to do with it? Yes. How can they say that? That's my question to you, Your Honor. It seems like an easy case, particularly in light of our recent precedents. Yes, Your Honor. The court just 10 days ago decided Contiano Cruz on a similar issue. Hernando Zavalas from 2015. We also have Crespin v. Holder from 2011 and Cordova v. Holder from 2014. So why are we here? I think that might be a question for the government, Your Honor. I'll ask the government. The immigration judge decided that Ms. Zavaleta-Policiano, quote, failed to produce evidence that she was threatened and harassed because of her relationship to her father. Her father went to Mexico? Yes, Your Honor. And there were threatening notes sent to her? Yes, Your Honor. Did the threatening notes mention members of the family? Yes, Your Honor. Did it mention her father? No, Your Honor. So what in the notes do you say indicated that the persecution was on count? Because the government makes the point that the threatening notes never mentioned her father. That's right, Your Honor. The threatening notes are evidence that the gang targets, as a method of operation, targets not only their intended target, but their intended target's families, as a means to exert pressure on their intended targets or as a means to retaliate against their intended targets. But particularly in this case, what is the specific evidence that she was targeted on account of family membership? I don't want to talk about the way gangs operate generally because this could be an example of that, or it could not. And so I want to know, the whole thing just revolves around the phrase, on account of. That's correct. And what evidence in the record is there that she was persecuted on account of this as opposed to the general violence? It's a sad situation in El Salvador. We all recognize that. But the law requires that there be a causal connection because the gangs there are inflicting very unfortunate acts upon a great many people. But they're not all on account of a prohibited ground. And so I want to know particularly, why was this persecution on account of a family membership? Yes, Your Honor. I would point you to Ms. Zavaleta Polisiano's affidavit, which was accepted by the government as true. On page 210 of the record, Ms. Zavaleta testifies in her affidavit that the gang threatened to kill her father's family when he could no longer pay the extortion fee. The gang did not say to Ms. Zavaleta's father, if you don't pay the extortion fee, we're going to kill another woman in your neighborhood. The gang's threats to Mr. Zavaleta, to her father, were focused on his family and the influence or pressure that threats to kill an immediate family... Can you read that to me? Read the part of the record? Yes. Yes. On page 210 of the record, Your Honor. And I'll go directly to the record. It's about halfway through the second paragraph. It became impossible for him to continue paying him, meaning the gang, and they, meaning the gang, began to threaten him and threatened that they would kill his family. Did she testify? She did not testify, Your Honor. The government agreed that her affidavit was credible and that the judge could decide the issue on the facts in the record and the law. So the government never... She offered to testify? From the record, there appears to be an agreement between counsel that the counsel present to the judge. But yes, she was there, ready to testify. So the threats, in your view, were directed against the father. And were the threats directed against the father because he had left the country for Mexico? Or were the threats directed because he failed to pay some money or debts or other money that they wanted to extract? Which was the reason? The threats that if he did not pay the extortion fee, they would kill his family were made while he was still in El Salvador. And then, when he left, we have a second fact that shows that Ms. Zavaleta was targeted because of her relationship with her family. She testified that immediately after... In her affidavit. And I said testify in her affidavit, her written testimony, Your Honor. She wrote in her affidavit immediately after her father fled the country. And because her father left, the gang began extorting her. The gang began extorting Ms. Zavaleta Policiano. Essentially, the gang decided, Mr. Zavaleta didn't pay. Okay, now his daughter pays. And we know that is how the gang acts because we have the gang's note to Ms. Zavaleta on page 146 in the record. And the gang's note to Ms. Zavaleta says, If you do not pay, you will pay with the blood of your children. In other words, if you don't pay, your children will pay. And that is what happened to Mr. Zavaleta and his daughter. When he did not pay, the gang targeted Ms. Zavaleta Policiano for extortion. And that's explicit. What is explicit is immediately after her father left the country, they began extorting Ms. Zavaleta Policiano. Ms. Zavaleta Policiano says in the context on the administrative record page 210, she talks about how extortion happened. And I can read from the record. Well, she would describe how a child from the neighborhood would come and bring her a phone and say, If there's a call for you, you better take the call. And she said in her affidavit, When I answered the phone, it would be the voice of a person saying that I needed to give the child money or else. They threatened me because my father had left, and they said that if I did not help them now, they would kidnap my daughter. So that is how she describes the phone calls. It's puzzling to me in a sense that she didn't testify, and it may have been a joint. I'm not saying that's your fault in any way. But it seems to me it really, this should have come down to a matter of credibility and whether the representations that she made are credible or not. I would think it would be a credibility judgment. And I'm just, again, mystified as to why this was presented in an affidavit form rather than in live testimony because there was no logistical or physical reason, was there, that she couldn't have testified? No, Your Honor. The government agreed to stipulate to the truth of her affidavit, and we have that in the transcript. And I don't have that in my fingertips, but it's one of the initial hearings. Okay. On page 65, the government attorney says to the judge, as far as the underlying case, Your Honor, the government is not that concerned with credibility in this case. I mean, I've seen these types of cases before. I have no reason to doubt the veracity of the respondent's statement. I believe this to be solely a legal issue as to whether or not the facts would actually give rise to a claim for asylum withholding or protection. And there's no question that our overworked immigration judges appreciate government counsel who come in and lighten their load a little bit. That's true, Your Honor. By proceeding on the written record. That's true, Your Honor. So I'd like to point out other evidence in the record that indicates, that establishes that gangs threaten or harm family members of their intended targets in order to compel compliance with their demands or to retaliate. On page 111 of the record, the report from the UNHCR says, typically families could be subjected to threats and violence as an act of retaliation or to exert pressure on other members of the family to succumb to Other evidence. The gang threatened Ms. Zavaleta several times that they would kidnap her daughter if she did not pay the extortion fee. Of course, we have the note that she was threatened that she would pay with the blood of her children if she didn't pay. Another note says, for the sake of you and the sake of your family, do not notify the police. And the officer told Ms. Zavaleta Policiano when she reported the threats to the police to be careful with her children. Therefore, we do believe that the record compels the conclusion that Ms. Zavaleta's family membership is one central reason for her persecution. I would like to touch on the issue of persecution, that neither the immigration judge nor the BIA decided whether the harm Ms. Zavaleta Policiano suffered in the past and fears in the future is persecution. However, the facts established are clear and the law in this court is clear. And we're asking this court to find that those facts established that Ms. Zavaleta Policiano suffered past persecution. The government says you didn't raise the point of past persecution. Yeah, I disagree with the government's reading of the record. I would point to the brief before the BIA on page 12 of the record where the attorney for Ms. Zavaleta below stated the immigration court erred in finding that Ms. Zavaleta Policiano did not suffer persecution on account of their membership in the Policiano family. And on the brief on page 13 of the record, the brief states that the record shows that the petitioners have been persecuted, having been extorted, threatened, and intimidated by members of the gang and then on account of being members in the family. I'll reserve the remaining time for my brief, for rebuttal. Thank you, Your Honors. Thank you. Mr. Heiss? Good morning, Your Honors. And may it please the Court, Michael Heiss on behalf of the Respondent and the Attorney General of the United States. Substantial evidence supports the agency's conclusion that petitioners failed to satisfy her burdens of proof. Establishing membership in a particular social group consisting of one's family is not an automatic ticket to asylum. Is not what? An automatic ticket to asylum. The alien must still establish that her group, her membership in a particular social group is one central reason for the past persecution claimed or the future persecution feared. But you will concede that family is an appropriate group that's recognized? Yes. That's well settled. I believe over 30 years. And you will concede that she is a member of the family that reported family group, were you not? Yes. Yeah, the agency did not dispute that she was a member. You will concede that she did receive notes that were related to her being a family member of the person, her father. Do you concede that? The notes, Your Honor, that she received? Did she receive a note? Did that corroborate? Did she receive a threat with that note? She did receive threats, yes. And you concede also that her father was told that if you don't pay this money, I'm going to harm or kill your family member. You concede that? It's in her affidavit. Yes. All that's conceded, correct? That she communicated that that is what she was told, yes. No, no, no, but that's unrebuttable. Yes. Right? Okay, now go ahead and prove it. What do we have to prove? Well, first of all, as to those prior events involving her father, as presented to the agency, as Your Honor was pointing out, she did not frame her argument in that way. As presented to the agency, she was not claiming to have suffered past persecution on the basis of the threats communicated through her father. Now, there's any number of reasons why she could have done that, most likely some kind of strategical decision by her counsel, as to whether or not she could actually establish that claim. Why wouldn't you want there to be testimony? Is the immigration judge simply too beleaguered and harried to want a live testimony in these cases? But why would you stipulate to the truthfulness of the affidavit unless you believed it to be truthful? Well, that precisely gets to the strategic point, as to whether or not government counsel saw a need for testimony or her own counsel. Apparently her counsel believed that what she had presented was enough. Government counsel believed it was not, to satisfy her burden as to the past persecution claim. We're getting into speculation as to why they did these things. But it's an election by a counsel, it's a strategic question whether or not to rely on the record. So the government strategized that within the four corners of the affidavit, it wasn't sufficient, and her coming could do nothing but maybe help her. Is that right? That would be the only strategy. Again, we're speculating, but it's possible. No, you speculate it. I think first, I'm just trying to follow up. Is that right? Yes. In other words, saying, whoa, if she's going to allow an affidavit, that says a matter of law, not sufficient. So let's leave it right there because it will only get worse for us. Right? Wouldn't that be the only plausible, reasonable lawyer-type strategy for that? The government's job isn't to win. It's to see that justice is done. I'd love to hear that. That's a nice jury argument for summation. But for here, it's a little hard to do that. But I'm sure they do. I'm sure they do. Yes. I mean, the point here is whether or not the claim she presented was adequate to satisfy her burden of proof in that regard. Government counsel apparently were speculating as to why they would do that. Your Honor's point as to why they might do that, that makes sense. We don't know. What we have here. The affidavit explicitly says that threats were communicated to her father that if he left the country and did not pay the debt, then the numbers of his family would be harmed. I mean, that's there in the affidavit. Yes, that's a statement of fact. But her argument. That's the problem. I mean, why would the government counsel be number one accepting the affidavit is true, which states explicitly that if you leave the country without paying the debt, the numbers of your family are going to be harmed. And then you come up here and argue. So I don't get it. I mean, the suggestion is that you've come up here to argue something when you conceded the case. The government has absolutely not conceded this case, Your Honor. Well, tell me why not. Because that's not the case she raised. Petitioner raised a claim of past persecution was based on the events subsequent to her father departing El Salvador and based on events all subsequent to her father departing based on the threats she received directly to her. And there's no case that I could find anywhere talking about threats communicated by a third party or enough to establish past persecution. There is a concession here as to the credibility of her testimony, but there's no direct link to her. So you're saying that it does not qualify if a threat is communicated to her father rather than to her? I'm not saying it does not qualify. It's a question of whether or not substantial evidence supports that that constitutes past persecution. And, again, this gets back into the strategic question as to why not go farther with it. Because that's the claim she was presenting. She was claiming that she suffered past persecution when she received notes that threatened her and her family, her own family, but not through her father to her. So her argument has to be that she proved that she took her particular social group claim. She has to prove that she's suffered past persecution or has a well-founded fear of future persecution based on her membership in her particular social group consisting of her family. That requires establishing that the gangs threatened her because of her family relationship. And on this record, there's inadequate evidence. There's not substantial evidence to compel that conclusion. As Your Honor stated earlier, it could go either way. Okay. What about the didn't she receive phone calls? She did. Okay. What do you contend those phone calls said? It's her own testimony, her own. I keep saying testimony. It's her affidavit. Simply that she received threatening calls. Not that they mentioned her father. The notes don't mention her father. And the focus for the immigration court and the board was the objective evidence in the record besides her own belief as to what these things mean. That's a subjective belief that this is what happened. But the objective evidence shows. So you rest your case on the fact that the phone calls, which were the direct communications between her and the gangs, you say that they did not mention her family. Correct. She provides a statement. It's unclear from the affidavit. And, again, the testimony likely would have clarified that, whether that's what she was saying they said to her. They threatened me because my father had left. That doesn't say in a phone call or in a note. That's just her belief as to why she was threatened. When she says, When my father left, he asked me to leave with him. He was still there. Right? Is there a fair reading of that? He was still there? When my father left, he asked me to leave with him. Correct. At the time, I had three children, and I was concerned about what would do so I stayed on. You say that's not an existential threat, why he was there, in response to what she knew, what they told her father, they would kill his family if he didn't pay. What is it like? What is it like in that affidavit? That's her statement of fact. But her claim, as presented to the agency, was not that that itself constitutes past persecution. That's not past persecution. You have three children. I'm not saying that's not past persecution, Your Honor. You're saying she didn't say that. Exactly. She didn't raise that argument. And therefore, well, never mind. She was represented by counsel. She had every opportunity to make these arguments, trying to reverse engineer it. But it is about as articulate as a human being can be. I would request, Your Honor, review her closing argument as made to the immigration judge that does not include this argument, and also her statements to the board in her brief do not explicitly get to this point. She broadly claims to have suffered past persecution on account of family membership, but does not make this factual connection. What if her lawyer didn't make a closing argument, but the record is the record? Well, we have a closing argument. Your argument is that unless the lawyer uses certain magic words... We are expected to use magic words, Your Honor. ...that our view is limited. I don't follow that at all. This court's review is, in fact, limited to the administrative record before the court and the arguments of counsel. These are strategic questions. Well, we don't pay any attention to a lawyer's closing argument. In this context, anymore do we pay attention to a lawyer's closing argument in a criminal trial. In this situation, I believe where you have stipulated testimony, it might make more sense to actually look at the arguments that are being raised. The argument as raised in her closing statement, administrative record, page 235, was that her respondent's father refused to give in to the extortionate demands of the gangs and left the country, and then she suffered past persecution. But your argument is that even though there may be threats of future persecution on behalf of the family, that there has been no record of past persecution. Well, that gets into whether or not there's a nexus. But is that your argument, that there's no record of past persecution on behalf of family membership? Correct, Your Honor. Whatever may happen in the future? Whatever may happen in the future. That part of her claim is that there has to have been a record of past persecution on account of family membership. Yes. And that that's the whole. Her argument is that she suffered past persecution. Her argument before the agency was that she suffered past persecution on account of her familiar group membership after her father departed El Salvador. Her new argument as presented before this Court is that she suffered past persecution throughout that time. As to the latter portion of that, she has to establish, or has to any of it, but more difficult for her, is establishing a nexus between the threats that came after her father departed and her membership in a particular social group. And that is because objective record evidence shows that the gangs target pretty much everyone. As Your Honor has noted, it's a wide, quote, gangs inflict harm on a great many people. The record shows that they do not discriminate as to their victims. There's nothing in the record to suggest that business owners, especially small business owners such as Petitioner, are in fact singled out for persecution. Gangs will go after whoever they can to establish their scope, power, and influence. To that end, Petitioner here is not arguing that the agency misapplied its standards. It's simply calling upon the Court to reweigh evidence. When applying the substantial evidence standard, this Court cannot reweigh evidence. The statute indicates that this asylum can be granted because of persecution, because of past persecution. Correct, Your Honor. Or a well-founded fear of persecution. If the threats are, even if there is no evidence, of past persecution on behalf of, on account of membership in the family, what about that prong of a statute dealing with a well-founded fear of prosecution? Would she have a well-founded fear of prosecution, of persecution, based on threats communicated to her father before he left for Mexico, or after he left for Mexico, because the statute there seems to address a future framework, as well as, it's worded in the disjunction, it says because of persecution, or, or, it doesn't say and. That's correct. Or a well-founded fear of persecution. Would the threats communicated to her father, like when he left, the fact that he owed a debt, and the fact that the gangs normally undertook this kind of family retribution, would that establish a well-founded fear of persecution? It could. It's the same point, though. Whether or not she raised this argument before the agency, whether or not she established that her, the threats communicated to her, or to her father, were on account of membership in a particular social group. As to the former question regarding threats to, made to her father, or through her father, to her, she did not sufficiently present that argument. I think you put yourself in a difficult position when you accepted that affidavit. And I realize the, you know, the backlog that the IJs face, and I realize that a lot of times they may think, you know, you're doing them a favor if you spare them the need to listen to live testimony. But I don't think you did yourself any favors. I was not trial counsel, Your Honor. I expected you to say that as well. Honestly, I've never seen that before. To be fair, I've never seen, I've been doing immigration cases like this for a decade, and I've never seen that. Be that as it may, these cases are not all that unusual. It's a very unfortunate thing, the level of violence in El Salvador. We see a lot of these cases involving, threats involving gangs. What's required, though, for asylum and withholding of removal and protection under the Convention against Torture is objective evidence that the threats are for a reason. For CAT, you don't have to establish membership in a particular social group. Nonetheless, you have to establish that the record objectively proves what's claimed. And so the stipulation as to what's in the affidavit is an acknowledgment by government counsel that this is not enough. This doesn't get her there, because the objective evidence shows that gangs target everyone. Gangs will go after whomever they can. Well, that's a legitimate point there. The problem is this thing could be open wide because the gangs are visiting violence indiscriminately. And really their motivation in most cases is not... It's simply a quest for money and power and whatever, and they don't care where they can acquire the money. They just want to acquire the money. So, you know, you can... And I'm sure in some cases they use fear of family retribution. But there's a real question of just opening this stuff up way too wide. When you read the statute, you say, you know, membership in a particular group.  or political opinion. That's the danger point. That's the danger point in the statute is that the courts would take it and just open it wide up. And so I understand that. I understand your concern. But I also... We're repeating ourselves. I don't understand the way the case was handled. As this court held in Hernandez-Valas, quote, not every threat that references a family member is made on account of family ties. Certainly, as Your Honor is pointing out, the gangs will do whatever they can. They will use family members as bait, in essence, to try to satisfy their ends. In all of the cases, including the recent ones this court has decided, the link between the gang's actions and the family is far clearer than what we have here. In Hernandez-Valas, you had a mother that was refusing to allow her son join a gang. In Cantillano Cruz, you had a wife that suspected her husband was murdered by his employer. And she directly confronted him. And that's why he came after her. That's the direct link. In Creston-Vallartes, the uncle and the alien were witnesses to a crime. And they cooperated with the police. And that is why the gang went after them, because they were cooperating with the police against gang members specifically. Gomez Villatoro, the family was threatened because they were proselytizing. All of them. The family was threatened because the father and the son were both engaging in proselytizing. The links are clear in those cases. And that directly addresses Your Honor's point that it is not some landslide of family, social group cases. You say the links were clear, but in each instance, a petition for review was granted. That's correct. So are you saying they were clear to us, but not clear to the IJ, and not clear to the board? In the cases where this court has disagreed with the board, the links were clear. So how did the board get it wrong? There are hundreds of cases where the court gets it right. How did the board get it wrong in those cases? The board is not infallible, Your Honor. Exactly. In this case, they got it right, Your Honor. In those cases, perhaps they did. This court is obviously bound to follow the precedent decisions of this court. Congress said race, religion, political opinion wasn't enough. Congress said social groups matter. And left to us, and the board, and the IJ. The board first, but yes. The board first, the IJ first, and then the board, and then us, to make sense of this. And Judge Wilkinson is certainly right. It's so broad, there's got to be some limiting principles applied. Chevron deference should apply, first and foremost, to the board's construction of what that ambiguous undefined term means. But the listening of cases you just read off point out, and as you just said, the board's not perfect, nor are we perfect. None of us is perfect. I am absolutely not perfect. So it's a question of drawing lines, assessing evidence. Yes. And as Judge Gregory suggested to you, and I think it's absolutely correct, your colleague before the IJ looked at this and said, my best shot is to keep her off the stand. My best shot, as you said, he looked at the affidavit, said, I think I got a shot of convincing this IJ, and thereafter the board, and maybe thereafter the Fourth Circuit, that this falls on this side of the line rather than that side. I see that my time is up. May I respond to your point? I didn't actually ask the question. I do have a response. My response to that is that the burden is on the alien throughout. It is on the alien to prove her case. And for the government to stipulate does not somehow flip the burden backwards. Of course. She had the opportunity to testify. There was no one saying, don't testify. Her counsel said, you don't need to testify. So that's the only person saying you don't need to testify. That does not somehow flip the burden back on the government to have done something wrong in this case. And I didn't mean to suggest that at all. Ultimately, it's a question of substantial evidence. Again, the agency has defined this ambiguous term. That is entitled to deference. The definitions of social distinction in particular, those things are not before the court here. The question before the court is whether substantial evidence supports the agency's finding, and it does. Therefore, the court should deny the petition for review. Thank you, Mr. Hines. Thank you. Ms. Jessup, you have very few minutes. Thank you, Your Honor. I do want to touch on the issue of past persecution. Ms. Hernandez did – excuse me, I'm thinking of Hernandez-Avalos. Ms. Avalos-Policiano did establish past persecution in the form of a death threat, and we know from this court's precedent cases that a death threat establishes persecution. I thought you were resting here on a well-founded fear of future persecution. Both, Your Honor. Pardon? Both past persecution and a well-founded fear of persecution. But you only have to establish one. It says or. That's right, Your Honor. What I want to understand is the affidavit here, which was admitted, was a little bare-boned, don't you think, on the question on account of? It's not rich in detail. It in some ways just states its conclusion. Wouldn't you agree? On the fact that the gang threatened to kill Ms. Avalos-Policiano's family when he could no longer pay the extortion fee, I think that's very clear. I would disagree with you on that. Normally, wouldn't you expect an affidavit knowing that this is the critical matter, the causation, the causal matter, would be richer in detail as to how many calls there were, perhaps the time, perhaps the content of the calls, something a little more ideally, some kind of corroboration of family members as to the reaction of the person who received the call? I mean, there was a lot that could have been in that affidavit that I'm not sure was there. And what do you have to say about that? I would say that if the government chose to litigate Ms. Avalos-Policiano's claims, litigate the facts, then Ms. Avalos-Policiano would have to provide more evidence. But the government stipulated to her credibility. But the government stipulated, but the government didn't stipulate to the shift in the burden. That's true. I mean, you still have to prove your case. And I have qualms about this. And it's not because I'm cold-hearted in any way. It's just that I fear just completely opening the statute. As my colleague Judge Davis has said, leaving it bereft. There is a danger of leaving it bereft of limiting principles. And if we start doing that, they're going to really take that statute and make something very draconian of it. But I'm concerned about the conclusory and bare-bone nature of the affidavit. Because I do think you still have to prove your case. And there's nothing more persuasive than richness of detail. That's what persuades the specifics. I don't see them here. I understand, Your Honor. My time is up. May I respond to your question? Absolutely. The fact that Ms. Zavaleta's father's family was threatened with death if he did not pay was established in the record. And then we do have richness of detail in terms of actual notes from the gang. We have a note from the gang that says, Ms. Zavaleta, you need to pay or you will pay with the blood of your children. Ms. Zavaleta, be careful. For your sake and the sake of your family, do not call the police. So you're not just relying on the affidavit? You're relying on those notes? The affidavit in and of itself, our position, is enough. All right, but suppose it's not my position. Help me out here. You're relying not just on the affidavit, but you're relying on those notes, aren't you? Yes, the notes and the timing. And the country condition report, especially from the UNHCR. The UNHCR states that typically families could be subjected to threats and violence as an act of retaliation or to exert pressure. I understand the general statement, but you're relying on specifically notes sent to her or her father, or both. The notes were sent to her. We have the death threat to the father from the gang. We have the phone calls from the gang to Ms. Zavaleta, which as a fact occurred immediately after her father left the country. We have a statement that states that when she answered the phone, the person would say, I need to give the child money or else. They threatened me because my father had left, and they said if I did not help them now, they would kidnap my daughter. So we have the circumstantial evidence that the gang targeted her because her father left, and then we also have the evidence from the gang itself that when one person doesn't pay, the child has to pay. Because the gang said in her note, Ms. Zavaleta, if you don't pay, you're going to pay with the blood of your children. Thank you. Thank you, Your Honor. Thank you. We will come down to recounsel and proceed to our next and last case for today.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Andre M. Davis